GILES, Appellant, v. PENFOLD et al, Respondents.

(252 N. W. 861.)

(File No. 7447. Opinion filed February 23, 1924.)

*Atwater & Helm,* of Sturgis, for Appellant.

*Chambers Kellar,* of Lead, and *Dan McCutchen,* of Belle Fourche, for Respondents.

CAMPBELL, J. Plaintiff instituted his action against the defendants seeking $11,280 actual damage and $25,000 exemplary damage, and to his complaint the defendants separately demurred on the grounds of misjoinder, defect of parties, and failure of the complaint to state a cause of action. The learned trial judge entered a single order sustaining both demurrers, from which order the plaintiff has now appealed, and the real question before us is whether or not plaintiff has succeeded in stating a cause of action against the defendants or either of them.

The complaint, which purports to set out two causes of action, is quite voluminous, occupying some forty pages of the printed record. The truth of its material and necessary allegations is, of course, confessed for present purposes by the demurrer. We think the fact situation, by virtue of which plaintiff deems himself entitled to damages from the defendants, may fairly be summarized from the various allegations of the pleading about as follows:

Plaintiff has resided in California for some years, where he had salaried employment and various business interests. Defendant Butte County Bank is in the general banking business at Belle Fourche, S. D., and defendant W. B. Penfold is the cashier and active managing officer thereof. In 1916 Alanson Giles, father of plaintiff, and one Bird owned 628 acres of land in Butte county, S. D., together with 125 shares of the stock in the Redwater Irrigating Association, a corporation engaged in the business of distributing water to its members and stockholders upon irrigable lands owned by them and under its ditches. The land in question was chiefly valuable by reason of being irrigable and under the ditches of the water association, and, by virtue of owning the 125 shares of stock, as aforesaid, Bird and Giles were entitled to the use of water from the ditches of the association upon their 628

acres of land to the extent of 125 miners' inches per annum. The right to the use of water did not run with the land, but pertained to the ownership of shares of stock in the water association. The value of the land alone did not exceed $5,000, but the value of the land, plus the right to 125 miners' inches of water per annum conferred by the ownership of the 125 shares of stock, was about $35,000. Defendant Penfold was also secretary of the Redwater Irrigating Association.

In November, 1916, Bird and Alanson Giles sold their land and their 125 shares of water association stock to one Smiley, who was a director and vice president of defendant bank and also president of the water association. Smiley took a warranty deed to the land in question and a transfer of the water association stock. As part of the purchase price, he executed his four promissory notes aggregating in principal the sum of $21,500. As a matter of convenience, the notes were made payable to defendant bank, but the real owners thereof were Bird and Alanson Giles. As security for the payment of these notes, Smiley gave a mortgage back upon the real estate he was buying, and deposited the 125 shares of stock in the water association with defendant bank under a written pledge agreement. Thereafter Alanson Giles acquired all the interest of Bird in the four promissory notes given by Smiley as aforesaid and in all the security therefor. Subsequently, and in 1921, Alanson Giles (then a resident of Los Angeles, California) died, leaving as his sole heirs at law his widow and three sons, one of whom was the plaintiff Edgar B. Giles. Alanson Giles at the time of his death was still the owner of the Smiley notes and the security therefor, and the same passed to his heirs, and plaintiff has succeeded to, or now represents, all rights and interest therein.

Smiley continued in default on his notes, and considerable interest accrued thereon, and it became necessary to endeavor to realize upon the notes and security, and in February, 1927, plaintiff came to Belle Fourche, S. D., to endeavor to collect the notes, or to make a settlement of the mattter, if possible, and, if necessary, to realize upon the security. Neither plaintiff nor his coheirs had ever had possession of the written pledge agreement relating to the water association stock hereinbefore mentioned, but plaintiff knew that the land in question was under the ditches of the association, and understood that some certificates of water stock were

connected in some manner or other with the sale of the realty by his father to Smiley, although he did not know what the exact situation was. Plaintiff therefore started to ascertain what the facts might be in reference to the matter, and, believing in and relying upon the honesty and integrity of the bank officers and of defendant Penfold, he called at the defendant bank and talked to Penfold and inquired concerning the situation, but defendant Penfold, wrongfully and falsely, and for the express purpose of deceiving plaintiff, stated that the bank did not have any such stock certificates and did not hold any such certificates as security available for enforcing the payment of the Smiley notes. Plaintiff made many similar inquiries from Penfold at different times and sought his advice and assistance in the matter, and also consulted with one Craig, who was president of defendant bank, and with Smiley himself, who was vice president of the bank, and they all denied that there had been any deposit of the stock certificates as security, and denied any knowledge thereof. Defendant Penfold, as secretary of the water association, told plaintiff that, according to the association records, neither plaintiff nor his father nor his coheirs had any stock in said corporation. Plaintiff was detained at Belle Fourche making inquiries and investigating the matter from February until December, 1927, when plaintiff secured his first definite information regarding the stock certificates in the form of an admission from Smiley that the stock had been issued to him and deposited with defendant bank under a written pledge agreement to secure the payment of his notes, and that the defendant bank still had 110 shares of the stock which it now claimed to hold as security for a loan made to Smiley, and that 15 shares of the stock had been sold to one Mortimer in 1920.

After this admission by Smiley, and in January, 1928, plaintiff employed a firm of attorneys at Deadwood to start action in the District Court of the United States upon the Smiley notes and to foreclose the real estate mortgage and recover the stock certificates. In response to inquiries from plaintiff's attorneys, the defendants continued to state that they could not find any escrow agreement relating to the stock, had no record of such agreement, and were not holding any stock subject to any agreement between Giles and Smiley. In connection with the equity action in the federal court, plaintiff caused interrogatories to be submitted to Penfold

concerning the facts and circumstances relating to the sale of the land and stock to Smiley, and Penfold answered said interrogatories falsely, for the express purpose of deceiving the plaintiff and the court and for hindering and delaying the plaintiff, and to prevent plaintiff from further prosecuting said action. By reason of said false answers to the interrogatories, the plaintiff, still believing that defendant Penfold would not perjure himself, and believing from his testimony that the United States District Court had no jurisdiction, dismissed his action.

Thereafter plaintiff commenced another action in the circuit court of Butte county, S. D., to foreclose the real estate mortgage and to recover the stock in the water association, in which action the defendant Penfold again testified falsely under oath for the purpose of hindering the plaintiff in securing possession of his security and for the purpose of defeating the plaintiff in his recovery. Nevertheless, and notwithstanding the false testimony of Penfold, the circuit court of Butte county, S. D., in that action on November 5, 1929, entered judgment in favor of plaintiff adjudging the said 125 shares of stock to have been pledged as further collateral security for the payment of the Smiley notes and awarding plaintiff the foreclosure of the real estate mortgage and the foreclosure of the lien upon the certificates of stock.

Defendant Penfold, as cashier and managing officer of the defendant bank, and as secretary of the water association, had custody and control of all records of both corporations and, both personally and as such officer, had full and complete knowledge of the entire transaction which he ought to have disclosed to plaintiff, and wrongfully, fraudulently, and deceitfully withheld information from plaintiff and misrepresented the situation to plaintiff for the purpose of deceiving plaintiff and hindering and delaying plantiff in locating said certificates of stock and establishing his lien thereon. By reason of this fraudulent and deceitful conduct of the defendant Penfold and the other officers of the defendant bank, plaintiff was compelled to remain in the city of Belle Fourche from February, 1927, until December, 1929, away from his family, home business, and income, to make investigations, search records, secure evidence, and prosecute his case, to plaintiff's actual damage, by reason of his expenditures and absence from his home and business, in the sum of $11,280.

As a second cause of action, substantially the same facts are realleged, and it is emphasized that respondents held the stock certificates in question in trust for appellant and his predecessors in interest, and in violation of said trust converted the stock to their own use, and concealed the facts from the appellant, and failed and refused to account for said trust res and destroyed the records of the transaction, or lost or concealed the same, whereby appellant asks actual damage as before in the sum of $11,280 and the sum of $25,000 as exemplary damages by way of punishment for the fraud.

Appellant himself states in his brief that this action is to recover actual and exemplary damages "for the deceit which started in February, 1927, and was maintained by the defendant bank and the defendant Penfold through all the transactions both in his statements to the appellant and in his perjured testimony up to the time judgment was taken in November, 1929." Construing the voluminous allegations of appellant most favorably to him, the most that can be claimed for them is substantially this: Appellant believed that he had a lien on 125 shares of water association stock in the possession of respondents. A circuit court of this state has now adjudicated that appellant did have such lien, and has awarded him his remedy for the enforcement thereof. So far as concerns the certificates of stock, it is apparent that appellant has now received everything to which he ever conceived himself entitled. His sole contention here is that, but for the knowingly false representations by respondents and the concealment of the truth by them, he could have secured the relief which the circuit court has now awarded him more expeditiously and at much less expense.

We do not believe that appellant has stated a cause of action against the respondents. All that appellant has ever claimed is that he was entitled to have a lien adjudicated and enforced against the certificates of stock in question. If, as a result of respondents' false representations and deceit, appellant had lost that right, and the stock certificates had got into the hands of an innocent purchaser where appellant could not reach them, the situation might be very different, but no such case is alleged here. Appellant concedes that the decree of a court of competent jurisdiction has established his lien and awarded him his remedy for its enforce-

ment. In all litigation, the very fact of the litigation causes the successful party trouble and expense, but the law does not contemplate that he shall recoup himself therefor from his adversary save only as to such items as he may, under the law, tax as costs. Suppose A sues B upon a promissory note. B denies the signature. The case is tried, and the court holds B liable on the note. Suppose, further, that B well knew the signature was his own and deliberately perjured himself when he denied it. A can have judgment against B for the amount due on the note with interest and taxable costs and no more, and he cannot thereafter sue B to recover his actual disbursements and the value of his time in investigating the matter and prosecuting his action, notwithstanding the fact that B may be criminally liable for perjury and notwithstanding the fact that, if B had told the truth, he would have paid the the note or confessed judgment thereon, whereby A would have been saved much time, trouble, and expenditure. So far as concerns the Butte County Bank, which was a party defendant in the litigation wherein appellant established his rights, we cannot see that appellant here is in any different situation as a matter of legal principle from the plaintiff suing on the note as above supposed, and we do not think our law contemplates any such recovery as he seeks. Cf. Annotation, 39 A. L. R. 1218; McHale v. Heman (1887) 28 Mo. App. 193; Baxter v. Brown (1910) 83 Kan. 302, 111 P. 430, 34 L. R. A. (N. S.) 1026; Yoder v. Cole (1911) 232 Pa. 509, 81 A. 546; Finch v. Western Nat. Bank (1914) 24 Cal. App. 331, 141 P. 261; Smith v. Chaffee (1930) 181 Minn. 322, 232 N. W. 515.

So far as concerns defendant Penfold personally, plaintiff in argument places considerable stress upon the fact that Penfold was not a party defendant in the action wherein plaintiff finally established his rights. It would be quite difficult to maintain, under the circumstances here alleged, that plaintiff addressed any inquiries to Penfold personally, as contradistinguished from Penfold as an officer of the Butte County Bank. In any event, if it be so assumed, Penfold as an individual did not have possession of the water stock which plaintiff claimed, stood in no fiduciary relation to plaintiff, and was under no obligation for the breach of which an action could lie to return truthful answers to plaintiff's inquiries upon any subject.

Being of the view that the complaint states no cause of action against respondents or either of them, the order appealed from is affirmed.

ROBERTS, P. J., and WARREN and RUDOLPH, JJ., concur.

POLLEY, J., not participating.